IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 1515 14TH STREET, LLC <br> 1612 16th Street, N.W., Unit 5 <br> Washington, D.C.  20009 <br><br> *Plaintiff,* <br><br> v. <br><br> SOCIÉTÉ GÉNÉRALE FINANCIAL CORPORATION <br> 245 Park Avenue <br> New York, NY 10167 <br> *Serve: Resident Agent* <br>  The Corporation Trust Company <br>  Corporation Trust Center <br>  1209 Orange Street <br>  Wilmington, Delaware 19801 <br><br> *Defendant*. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Case No. _____ <br> * <br> * <br> * <br> * <br> JURY TRIAL DEMANDED <br> * <br> * |

**COMPLAINT**

Plaintiff, 1515 14th Street, LLC ("Plaintiff"), through undersigned counsel, sues Société Générale Financial Corporation ("Defendant") and for its cause of action states as follows:

JURISDICTIONAL ALLEGATIONS

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. 1332(a), as there is complete diversity of the parties, who are citizens of different States and the amount in controversy exceeds $75,000.

THE PARTIES

2.      Plaintiff 1515 14th Street , LLC, is a District of Columbia limited liability company, which has its principal place of business in the District of Columbia and owns real estate in the District of Columbia located at 1515-1525 14th Street, N.W. (the "Property").  The major tenant in that property is the Whitman Walker Clinic.

1

3. Defendant Société Générale Financial Corporation ("SocGen" or "Lender") is a Delaware corporation that has its principal place of business in the State of New York. Defendant is also, among other things, a lender in the United States, including the District of Columbia, France's third largest bank by total assets, the sixth largest bank in Europe, and the world's 18th largest bank.

FACTS

4. Plaintiff set out to identify a suitable commercial loan to re-finance the existing first mortgage loan on the Property, which course of events led Plaintiff to submit an application to SocGen for a commercial mortgage-backed security ("CMBS") loan.

5. SocGen has extensive experience in commercial lending, re-financing, and in originating, funding, securitizing, and selling CMBS loans, and SocGen held itself out as having such experience and expertise to Plaintiff and its broker.

6. Plaintiff did not have extensive experience with CMBS loans.

7. Plaintiff provided SocGen with comprehensive information and documentation about itself, its assets, the Property, its individual "Sponsor," and everything else SocGen reasonably requested in order to evaluate the potential loan, prior to the issuance of the below-defined Term Sheet.

8. On or about May 31, 2024, SocGen agreed to make a CMBS loan to Plaintiff in the amount of $29,000,000 ("the Loan"), which was to replace a prior first mortgage on the Property originally made by Wells Fargo Bank, National Association, but, at the time here relevant held by Wilmington Trust, National Association, Trustee for the benefit of the registered Holders JPMBB Commercial Mortgage Securities Trust 2014-C22, Commercial Mortgage Pass-Through Certificates, Series 2014-C22 ("Noteholder"), which was coming due on or about July 31, 2024.

9. After extensive discussions and negotiations, SocGen and Plaintiff executed a 12-page Summary of Proposed Financing Terms for 1515-1525 14th St NW Medical Building ("Term Sheet"), with multiple appendices, for the refinance of the prior first mortgage on the Property ("Noteholder's loan") with the Loan. The Term Sheet stated in a header, in small sized text, that it was "Not a commitment – For discussion purposes only."

10. The Term Sheet includes multiple provisions that are stated as being binding upon the parties and which SocGen indeed treated as binding.

11. Recognizing that it created obligations for the parties, the Term Sheet stated as follows:

> Conditions: Lender's obligations under this Term Sheet are subject in their entirety to the satisfaction by Borrower and Borrower Sponsor of such conditions to closing which are customarily required by Lender in connection with commercial mortgage loans similar in size and purpose to the transaction, including by not limited to, the due diligence and closing deliveries set forth in Schedule A attached hereto and made a part hereof.

12. Finally, after setting forth price, scope of work to be performed, the time for performance, terms of the Loan, and all other material terms and conditions of the proposed loan, the Term Sheet provided:

> "The proposed terms and conditions set forth in this Term Sheet are provided as a summary of discussions between Borrower Sponsor and Lender only and do not constitute an offer, agreement, or commitment to lend by Société Générale Financial Corporation or any of its affiliates or an agreement or commitment to borrow by Borrower. *The actual terms and condition upon which Lender might extend credit to Borrower are subject to satisfactory completion of due diligence, credit committee approval, satisfactory documentation, the absence of any material adverse changes in the financial condition or prospects of the property, Borrower or Borrower Sponsor or in the economy or capital markets (including the market for commercial mortgage-backed securities) and such other terms and conditions are determined solely by Société Générale.* This Term Sheet shall be governed by, and construed in accordance with, the laws of the State of New York. …. *In addition, Borrower Sponsor understands that any agreement*

3

*that may hereafter [be] made by Lender is subject to the communication by Borrower Sponsor and its affiliates to Lender of such documentation or other evidence as is reasonably requested by Lender* and to the completion at the satisfaction of Lender of all necessary identification and verification checks or other similar checks under all applicable laws and regulations, pursuant to anti-money laundering, terrorist financing and sanctions and embargoes laws and regulations with regard to the transaction contemplated herein." [Emphasis added.]

13. There is nothing in the Term Sheet that anticipates that any further document or more formal document was to be signed to reflect any agreement related to the Loan except the actual closing documents, and there was no declination to be bound until a more formal document was signed or for any particular period or until any particular event.

14. There is nothing in the Term Sheet that conditions the Loan, or SocGen's closing or funding of the Loan, on SocGen's ability to satisfy itself, or ensure, that the Loan would be appealing or well-received by potential investors who would consider purchasing CMBS bonds that include the Loan.

15. At the time of negotiating, issuing, and signing the Term Sheet, SocGen intended not to fund or close the Loan if it was unable to assure itself that the Loan could be securitized and sold after closing on the secondary market on terms acceptable to SocGen. SocGen never stated or disclosed as much to Plaintiff—and as SocGen knew, Plaintiff had no reasonably ascertainable way of knowing that SocGen did not intend to fund the Loan if it could not be securitized and sold on the secondary market on terms acceptable to SocGen. In fact, the Term Sheet indicates that SocGen has the "right at any time, either prior to or following the closing of the Loan" to transfer the Loan on the "secondary market," but the Term Sheet specifically does not state the true state of affairs nor SocGen's intention, that SocGen would not close the Loan unless it had already been sold or was set for sale upon closing.

16. At the time SocGen negotiated, issued, and signed the Term Sheet, it had sufficient information regarding the Loan and the Property in order to investigate and assure itself about whether the Loan could be securitized and sold on the secondary market upon closing; or even to identify and secure a particular buyer.

17. However, as Plaintiff would later learn, SocGen recklessly and wantonly issued the Term Sheet despite knowing that a (concealed) condition that it considered necessary for closing the Loan had not been satisfied because no buyer had been identified for the Loan on the secondary market, and SocGen had not made timely and sufficient efforts to determine whether a suitable secondary market sale would be possible.

18. SocGen recklessly and wantonly led Plaintiff to believe and rely upon the understanding that SocGen would close on the Loan if the Term Sheet conditions were satisfied, when, in reality, at the time the Term Sheet was issued SocGen had not determined whether or not it would close even if all Term Sheet conditions were satisfied.

19. The manner in which SocGen proceeded toward the closing date, without notifying Plaintiff of its intent not to close unless a secondary-market sale could be ensured without identifying a buyer for the Loan and without making timely and reasonable efforts to identify a buyer for the Loan, was reckless and demonstrated a willful disregard for Plaintiff's rights and expectations as a putative borrower whose extant Noteholder's loan was coming due concurrent with the closing date.

20. After both parties executed the Term Sheet they both proceeded toward closing of the Loan in the absence of any further written agreement. All conditions to closing were set forth in the Term Sheet, as stated above, and satisfaction of those conditions was the only condition precedent to the parties' obligations. The parties manifested an intention to complete the loan in accordance with the Term Sheet and proceeded accordingly.

96132\003\10058851.v1

21. Upon information and belief, SocGen undertook and satisfactorily completed its due diligence and obtained credit committee approval. SocGen arranged satisfactory completion of all documents required for closing consistent with the terms of the Term Sheet.

22. Plaintiff communicated to SocGen all documentation and other evidence as was reasonably requested by Soc Gen and arranged for the completion to the satisfaction of SocGen of all necessary identification and verification checks or other similar checks under all applicable laws and regulations.

23. Plaintiff did all things requested or required of it and provided all documents and other resources requested by SocGen preparatory to closing on the loan and made or was prepared to make at closing all representations, warranties and covenants appropriate or customary for similar transactions, as requested.

24. Plaintiff satisfied or was prepared to satisfy by closing all conditions to closing that were identified in the Term Sheet and customarily required by Lender in connection with commercial mortgage loans similar in size and purpose to the transaction, including by not limited to, the due diligence and closing deliveries required.

25. All conditions precedent for the Loan were satisfied, and Plaintiff did all things required of it under the Term Sheet.

26. There were no material adverse changes in the financial condition or prospects of the property, Borrower, Borrower Sponsor, the economy, or capital markets (including the market for commercial mortgage-backed securities) from the date of the Term Sheet until the date of the scheduled closing and no exercise of reasonable discretion could determine otherwise.

27. Plaintiff paid SocGen the Origination and Processing Fee of $10,000, which per the Term Sheet was fully earned and non-refundable with the submission of the Term Sheet, and the

Case 1:25-cv-02355-PLF   Document 1   Filed 07/22/25   Page 7 of 15

Good Faith Deposit of $75,000 required by the Term Sheet. The $10,000 Origination and Processing Fee was said in the Term Sheet to be earned by the Lender with the "submission" of the Term Sheet, presumably when it was a commitment, and certain other terms were tied to "execution" of the Term Sheet (*e.g.*, Exclusivity provision for a period of 90 days following execution of the Term Sheet). The Good Faith Deposit was not tied to the execution of the Term Sheet, but was paid by Plaintiff as if the Term Sheet was in effect and other provisions of the Term Sheet were abided by both parties as if the Term Sheet was in effect, as both parties then understood it to be.

28. The Exclusivity provision prohibited Plaintiff from seeking an alternate lender upon consequence of forfeiting the entire Good Faith Deposit and having to pay an additional amount of $290,000 to SocGen as liquidated damages by reason thereof.

29. Plaintiff abided the Exclusivity provision of the Term Sheet and in light of the absence of any material adverse changes in the financial condition or prospects of the property, Borrower, Borrower Sponsor or the economy or capital markets (including the market for commercial mortgage-backed securities) and, in light of SocGen's objective manifestation of its intent to provide the financing required by the Term Sheet, made no alternative provision for financing.

30. Closing was scheduled for July 27, 2024, with all terms of the closing Loan Documents prepared (or capable of being prepared within SocGen's control) and consistent with the terms of the Term Sheet and, as required, consistent with SocGen's standard documentation. Plaintiff was never notified of any allowed and required change in any term of the Term Sheet prior to the scheduled closing.

31. All things necessary and appropriate to close and consistent with the Term Sheet were completed by Plaintiff. Plaintiff satisfied every term and condition of closing and attended the scheduled closing, signed all the closing documents, and awaited the immediate funding of the Loan.

7

96132\003\10058851.v1

Understanding that the closing was completed, subject only to SocGen signing the documents already signed by Plaintiff and completion of funding, Plaintiff's principal participated in a "loan closing party" with colleagues.

32. At some point in advance of the closing date, SocGen learned that the Loan could not be sold on the secondary market upon closing on terms acceptable to SocGen. However, that knowledge was not communicated to Plaintiff until *after* the scheduled closing date, nor was the fact that SocGen would not be funding the Loan under those circumstances communicated to Plaintiff until *after* the scheduled closing date.

33. Unexpectedly, the next day after Plaintiff attended the closing and a day or two before the Noteholder's loan was coming due, Plaintiff was advised that SocGen failed and refused to fund the Loan, although no reason therefore was then provided. At no time prior to the scheduled closing did SocGen make known a desire for an unrestricted exit from the lending obligation or that it did not intend to consummate the Loan.

34. As SocGen would admit after the scheduled closing and after the Term Sheet expired by its own terms, SocGen elected not to fund the loan because it did not feel confident that the Loan could be sold on the secondary market on terms favorable to SocGen either before or immediately after closing. This was not an excuse or condition permitted under the Term Sheet for not closing and Plaintiff had never accepted the risk of the Loan not closing on grounds not stated in the Term Sheet.

35. When SocGen failed to close, as a result of the foregoing, Plaintiff was greatly damaged, including, but not limited to: paying extensive fees and costs for preparation for closing; legal fees, forbearance fees, default interest expense, and expenses paid to the lender then holding the already extant mortgage on the Property to avoid a declaration of default; paying costs to SocGen of approximately $85,000; paying the costs of obtaining emergency new, short-term emergency

financing needed to avoid default; the additional cost of such short-term financing over what would be the cost of the bargained-for financing with SocGen; and Plaintiff has been otherwise damaged.

36. In light of events in the economy occurring after the scheduled closing of the Loan, Plaintiff has been unable to yet obtain long-term financing, but anticipates that the cost of obtaining new financing, if it can now be obtained, including additional settlement and interest costs, will greatly damage Plaintiff and, if new permanent financing cannot now be obtained, Plaintiff will be immensely damaged.

37. On September 24, 2024, SocGen sent a letter to Plaintiff regarding "Termination" of the Term Sheet, or as SocGen called it, the "Application Letter." In that termination letter, SocGen acknowledged that the Application Letter was "issued" by SocGen and "accepted" by Plaintiff's sponsor. The termination letter acknowledged that SocGen "determined that it is unwilling to proceed with the Proposed Loan." The termination letter continued to cite sections of the Application Letter that SocGen contended entitled it to retain Applicant's Good Faith Deposit and to charge Applicant additional moneys to cover SocGen's alleged "out of pocket expenses incurred to date with respect to the proposed Loan." The termination letter then requested that the Applicant release SocGen from any liability arising from the Loan or the Term Sheet.

38. Plaintiff did not sign the termination letter, remit the moneys requested, nor grant any release to SocGen.

COUNT I: BREACH OF CONTRACT

39. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as if fully set forth herein.

40. Plaintiff and Defendant entered into a contract pursuant to which Defendant was to provide financing of $29,000,000 for the Property. Even if the Term Sheet was subject to conditions

9

subsequent or conditions precedent to closing, any and all of such conditions were satisfied. Before the scheduled closing date all parties clearly and certainly manifested an intention to be bound by the terms of the Term Sheet and to close. Under applicable law, the law of New York, the Term Sheet was a binding contract, committing SocGen to provide the Loan consistent with the terms set-out in the Term Sheet.

41.     Plaintiff did all things required of it. SocGen breached the parties' contract and failed and refused to provide the required financing.

42.     Plaintiff has been damaged by Defendant's material breach of the contract as described above

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against SocGen in the amount of at least $800,000, plus such additional losses as can determined if and when long-term financing can be arranged or, alternatively, such additional damages as will be incurred if long-term financing cannot be arranged, prejudgment interest, post-judgment interest, plus the costs of this action, and such other and further relief as this Honorable Court deems just and proper.

<u>COUNT II:  PROMISSORY ESTOPPEL</u>

43.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as if fully set forth herein.

44.     Defendant made a clear and definite promise to provide financing to Plaintiff as described.

45.     Plaintiff reasonably and detrimentally relied on Defendant's promise to provide such financing and has been damaged by Defendant's failure to provide such financing as promised.

46.     Enforcement of Defendant's promise to provide the Loan to Plaintiff would prevent injustice and would be in the public interest.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against SocGen in the amount of at least $800,000, plus such additional losses as can be determined if and when long-term financing can be arranged or, alternatively, such additional damages as will be incurred if long-term financing cannot be arranged, plus prejudgment interest, post-judgment interest, plus the costs of this action, and such other and further relief as this Honorable Court deems just and proper.

## COUNT III: FRAUDULENT INDUCEMENT - CONCEALMENT

47. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as if fully set forth herein.

48. When Plaintiff approached SocGen, both parties understood that Plaintiff was applying for a CMBS loan.

49. SocGen induced Plaintiff to execute the Term Sheet, binding itself as stated therein—including but not limited to providing a deposit, paying fees, and accepting the exclusivity provision—by false representing to Plaintiff that it would fund the Loan if the conditions stated in the Term Sheet were satisfied as described, with the limited flexibility for SocGen to modify the interest rate, or related factors upon certain conditions.

50. However, SocGen knew, but intentionally concealed from Plaintiff, as a means dissuading Plaintiff from pursuing or preferring other financing and to induce Plaintiff to accept SocGen's terms and exclusivity requirements, that it would not fund the Loan, even if Plaintiff satisfied all contingencies and all conditions of the Term Sheet were met, if SocGen was not satisfied that the Loan could be securitized and sold on the secondary market on terms acceptable to SocGen.

51. SocGen knew that Plaintiff was unaware that SocGen would not fund the Loan unless it was satisfied that the Loan could be securitized and sold on the secondary market on terms

acceptable to SocGen, as SocGen intentionally, willfully, and deceptively concealed that from Plaintiff so that it would sign the Term Sheet.

52. SocGen's intentional concealment constitutes an oppressive and wanton action by a sophisticated lender, in reckless indifference and willful disregard for the rights of Plaintiff, who it knew to be dependent on the Loan to re-finance its existing mortgage loan.

53. In entering into the Term Sheet and abiding by its terms, Plaintiff reasonable relied on SocGen's representations about the conditions under which it would close the Loan, and the limited bases upon which it would not close the Loan, and had no reason to know of SocGen's concealed plan to refuse funding if SocGen was not satisfied that the Loan could be securitized and sold on the secondary market upon closing on terms acceptable to SocGen.

54. SocGen's fraudulent concealment directly and proximately resulted in, *inter alia*, Plaintiff being denied the Loan and incurring the severe detriment of having forgone all other funding avenues, being unable to re-finance its prior existing mortgage loan on the Property, and incurring the monetary damages of higher re-financing costs, higher interests, and the substantial risk of even great economic harm, as well as those other damages described above.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against SocGen in the amount of at least $800,000, plus such additional losses as can be determined if and when long-term financing can be arranged or, alternatively, such additional damages as will be incurred if long-term financing cannot be arranged, plus punitive damages in such amount deemed just and reasonable, plus prejudgment interest, post-judgment interest, plus the costs of this action, and such other and further relief as this Honorable Court deems just and proper.

## COUNT IV: NEGLIGENCE

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38, as if fully set forth herein.

56. At the time the final Term Sheet was prepared and signed, SocGen had substantial and sufficient material knowledge about the Loan and the Property to explore whether the Loan could be securitized and sold on the secondary market immediately upon closing on terms acceptable to SocGen, and even to identify a buyer.

57. If SocGen contends that the Term Sheet was subject to undisclosed condition precedent not set forth in the Term Sheet that SocGen be able to securitize and sell the Loan, Soc Gen had a duty to timely and diligently make efforts to securitize and sell the Loan.

58. SocGen well knew that Plaintiff was proceeding in reliance upon the reasonable expectation that the Loan would be available on terms set forth in the Term Sheet.

59. SocGen also knew that Noteholder's loan was scheduled to mature within days after the Term Sheet's stated expiration date.

60. SocGen and Plaintiff had a special relationship because SocGen knew that its disclosures and stated conditions or contingencies for closing the loan would be (and were being) utilized and heavily relied upon by Plaintiff, in committing itself to exclusivity, among other things, and in choosing to proceed with this particular loan from SocGen rather than other lenders and other avenues of financing.

61. SocGen negligently failed to timely and diligently make appropriate efforts to sell and securitize the Loan, thus breaching its duties to Plaintiff, without any negligence on the part of Plaintiff contributing thereto

96132\003\10058851.v1

62. SocGen negligently allowed Plaintiff to proceed as if SocGen would fund the Loan, all to the great damage of Plaintiff, thus breaching its duties to Plaintiff.

63. SocGen breached its duties by issuing the Term Sheet and creating in Plaintiff the entirely reasonable expectation that SocGen would close on the Loan before SocGen determined whether the Loan would be sufficiently saleable on the secondary market either before or immediately upon closing, and by not informing Plaintiff as soon as it ascertained any legitimate concerns that the Loan would not be saleable and that it had a right to not close on the Loan.

64. SocGen's knowing failure to inform Plaintiff that the Loan would not be funded unless SocGen could assure itself that the Loan would be saleable on the secondary market either before or immediately upon closing constitutes an oppressive and wanton action and/or omission by a sophisticated lender, in reckless indifference and willful disregard for the rights of Plaintiff, which it knew to be dependent on the Loan to re-finance its existing mortgage loan.

65. SocGen's knowing failure to uphold its duty of timely and diligently determining whether the Loan would be saleable before issuing the Term Sheet or, at least, before Plaintiff was put to the time, costs and damages consequent to Plaintiff's preparation for closing on the Loan, constitutes an oppressive and wanton action and/or omission by a sophisticated lender, in reckless indifference and willful disregard for the rights of Plaintiff, which it knew to be dependent on the Loan to re-finance its existing mortgage loan.

66. As a direct and proximate result of SocGen's breaches of its duties to Plaintiff, Plaintiff was denied the Loan, after being saddled with the exclusivity and other burdensome terms of the Term Sheet, and incurred all of the other economic damages described herein that flowed therefrom.

67. SocGen's breaches of its duties to Plaintiff directly and proximately resulted in Plaintiff being denied the Loan and incurring the severe detriment of having forgone all other funding

avenues, being unable to re-finance its prior existing mortgage loan on the Property, and incurring the monetary damages of higher re-financing costs, higher interests, and the substantial risk of even great economic harm, as well as those other damages described above.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against SocGen in the amount of at least $800,000, plus such additional losses as can determined if and when long-term financing can be arranged or, alternatively, such additional damages as will be incurred if long-term financing cannot be arranged, plus punitive damages in an amount deemed just and reasonable, plus prejudgment interest, post-judgment interest, plus the costs of this action, and such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

LERCH, EARLY & BREWER, CHARTERED

By: _/s/ Hayes Edwards_
S. Hayes Edwards Jr., Atty. No. 1015302
hedwards@lerchearly.com
7600 Wisconsin Avenue, Suite 700
Bethesda, Maryland  20814
Telephone:  (301) 841-0191
Facsimile:  (301) 347-3743
*Attorneys for Plaintiff*

Dated: July 22, 2025

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

_/s/ Hayes Edwards_
S. Hayes Edwards Jr.

96132\003\10058851.v1