**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| 1515 14TH STREET, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-2355 (ABJ) |
| | ) | |
| SOCIÉTÉ GÉNÉRALE FINANCIAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff 1515 14th Street, LLC brought this action against defendant Société Générale Financial Corporation ("SocGen") consisting of claims of breach of contract, promissory estoppel, fraudulent inducement, and negligence related to the negotiation of a loan agreement.  Compl. [Dkt. # 1] ¶¶ 39–67.  Defendant has moved to dismiss the complaint for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Def.'s Motion to Dismiss [Dkt. # 10] ("Mot.").  Plaintiff opposed the motion, and the matter is fully briefed.  Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. [Dkt. # 14] ("Opp."); Def.'s Reply Mem. [Dkt # 18] ("Reply").

For the following reasons, defendant's motion will be **GRANTED**.

**BACKGROUND**

Plaintiff is a company in the District of Columbia that owns property at 1515-1525 14th Street, N.W.  Compl. ¶ 2.  Plaintiff had a mortgage on the property and sought to refinance that loan before it matured on July 31, 2024, so it applied for a commercial mortgage-backed security ("CMBS") loan from defendant, a French bank.  Compl. ¶¶ 3–4, 8.  The parties entered into "extensive discussions and negotiations," and plaintiff alleges that it provided defendant with the

"comprehensive information and documentation" defendant needed to evaluate the loan.  Compl. ¶¶ 7, 9.

The complaint alleges that on May 29, 2024, plaintiff and defendant executed a 12-page "Summary of Proposed Financing Terms" ("Term Sheet") that laid out details of the proposed $29,000,000 CMBS loan that would replace the mortgage on the property.  Compl. ¶¶ 8–9; Ex. A to Opp. [Dkt. # 14-1] ("Term Sheet").  Plaintiff alleges that the Term Sheet included the "price, scope of work to be performed, the time for performance, [and the] terms of the [l]oan."  Compl. ¶¶ 9, 12.  It required plaintiff to pay defendant a $10,000 origination and processing fee, as well as a $75,000 "good-faith deposit," both of which plaintiff paid.  Compl. ¶ 27.  It also included an exclusivity provision that gave defendant the exclusive right to fulfill the loan for ninety days. Compl. ¶¶ 28–29.

The complaint alleges that both parties "proceeded toward the closing of the loan," scheduled for July 27, 2024, without any further written agreement, and that plaintiff "satisfied every term and condition" of the Term Sheet.  Compl. ¶¶ 20, 31.  Plaintiff "attended the scheduled closing, signed all of the closing documents, and awaited immediate funding of the [l]oan," with the "[u]nderstanding that the closing was completed, subject only to SocGen signing the documents."  Compl. ¶ 31.  But on the following day, plaintiff was informed that defendant would not be funding the loan.  Compl. ¶¶ 25, 30–34.  SocGen allegedly "elected not to fund the loan because it did not feel confident that the [l]oan could be sold on the secondary market on terms favorable to SocGen," a circumstance that was not communicated to plaintiff before the closing date.  Compl. ¶¶ 32, 34.

Since the existing mortgage loan would mature only a few days later, plaintiff had to secure short-term financing from a different lender on less favorable terms to avoid default.  Compl. ¶¶ 30,

35–36.  Plaintiff alleges that it incurred additional costs, including "extensive fees and costs for preparation for closing, legal fees, forbearance fees, default interest expense[s], and expenses paid to the lender then holding the already extant mortgage . . . to avoid a declaration of default." Compl. ¶ 35.

On September 24, 2024, defendant sent a formal termination letter to plaintiff.  Compl. ¶ 37.  The letter informed plaintiff that defendant would keep the initial deposit, and it requested additional payment for expenses incurred by defendant related to the proposed loan.  Compl. ¶ 37. It also asked plaintiff to release defendant from all liability arising from the term sheet.  Compl. ¶ 37.  Plaintiff did not sign the termination letter, nor did it send any additional money to defendant or release any liability.  Compl. ¶ 38.

Instead, plaintiff filed the instant suit consisting of four counts:

- **Count One** alleges that the parties entered into a contract for a loan, which defendant breached when it failed to provide the loan.  Compl. ¶¶ 39–42.

- **Count Two** is a claim for promissory estoppel, alleging that defendant made a clear and definite promise to provide financing which plaintiff reasonably relied upon to its detriment.  Compl. ¶¶ 43–46.

- **Count Three** alleges fraudulent inducement and concealment, claiming that defendant "knew, but intentionally concealed from Plaintiff" that it would not fund the loan unless it was satisfied it could be sold on the secondary market.  Compl. ¶¶ 47–54.

- **Count Four** alleges that defendant both negligently failed to inform plaintiff that it would not fund the loan unless it was satisfied it could be sold on the secondary market and "negligently failed to timely and diligently make appropriate efforts to sell and securitize the Loan."  Compl. ¶ 55–67.

### STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor.  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions.  *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242

4

(D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.      The complaint fails to state a breach of contract claim.**

Count One alleges that the Term Sheet was a binding contract between the parties that required defendant to provide plaintiff the loan, and that defendant breached that contract. Compl. ¶¶ 39–42. Defendant provided a copy of the Term Sheet as an exhibit to its opposition, and the parties agree that New York law governs. Compl. ¶ 40; Mot. at 7; *see* Term Sheet at 11 ("This Term Sheet shall be governed by. . .the laws of the State of New York"). Since the Term Sheet is specifically referenced and incorporated in the complaint, the Court may consider its provisions in ruling on the motion to dismiss.

To state a claim for breach of contract, a plaintiff must allege that the parties entered into a valid contract. *See Harris v. Seward Park Hous. Corp.*, 913 N.Y.S.2d 161, 162 (N.Y. App. Div. 2010) (breach of contract requires "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages."). "[W]hether a contract exists . . . centers upon the parties' intent to be bound, i.e., whether there was a 'meeting of the minds' regarding the material terms of the transaction." *Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank, U.S.A.*, 574 N.Y.S.2d 18, 19 (N.Y. App. Div. 1991), citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541 (N.Y. 1981). "[T]here must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect

to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999).

The inquiry is particularly focused on whether the parties' "agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance." *IDT Corp. v. Tyco Grp.*, 918 N.E.2d 913, 915 n.2 (N.Y. 2009). "[I]f the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further." *Cohen v. Lehman Bros. Bank, FSB*, 273 F. Supp. 2d 524, 528 (S.D.N.Y. 2003) (applying New York law). "[T]he court has the responsibility of effectuating the true intent of the parties, and where the terms are unambiguous, this intent must be gleaned from the plain meaning of the words used by the parties." *Diel v. Diel*, 966 N.Y.S.2d 345 (N.Y. Sup. Ct. 2013), quoting *Fukilman v. 31st Ave. Realty Corp.,* 835 N.Y.S.2d 343, 344–45 (N.Y. App. Div. 2007).

Defendant argues that the Term Sheet is not a contract, but rather "an unenforceable 'agreement to agree.'" Mot. at 7, quoting *Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*, 804 N.Y.S.2d 301, 302 (N.Y. App. Div. 2005). It points to the statement emblazoned in bold letters on top of nearly every page of the Term Sheet: "**Not a commitment – For discussion purposes only**." *See* Term Sheet at 2–12 (emphasis in original). Moreover, defendant emphasizes the final page of the document, which states:

> The proposed terms and conditions set forth in this Term Sheet are provided as summary of discussions between Borrower Sponsor and Lender only and do not constitute an offer, agreement, or commitment to lend by Société Générale or any of its affiliates or an agreement or commitment to borrow by Borrower. The actual terms and conditions upon which Lender might extend credit to Borrower are subject to satisfactory completion of due dilligence, credit committee approval, satisfactory documentation, the absence of any  material adverse change in the financial condition or prospects of the Property, Borrower or Borrower Sponsor or in the economy or capital markets (including the market for commercial mortgage-backed securities) and other such terms and conditions as are determined solely by Société Générale.

6

*Id.* at 11.

The Court finds that the Term Sheet is not an enforceable contract. Beginning with the language of the Term Sheet itself, from the very first page, it makes clear that it is a "brief summary" of terms SocGen "proposes" – not a final, complete agreement. Term Sheet at 1. It contains bolded disclaimer language throughout, and reiterates on the last page that it "do[es] not constitute an offer, agreement, or commitment to lend by [SocGen.]" Term Sheet at 2–12. The end of the document further confirms that "the actual terms and conditions upon which [SocGen] might extend credit" will be based on a number of factors, including "other such terms and conditions as are determined solely by [SocGen]." *Id*. at 11. Such an agreement "would be subject to . . . satisfactory documentation," *id.*, again indicating that the Term Sheet was not final or complete. And contrary to plaintiff's assertions, the Term Sheet itself did not establish a closing date for the transaction; it simply states that if "the Loan is not closed and funded within 60 days [from May 29, 2024], the Term Sheet shall automatically expire." *Id.*

The Court's conclusion is bolstered the recent decision of a New York appellate court in *Cypress Gates, Inc. v. Societe Generale, S.A.*, 206 N.Y.S.3d 540 (N.Y. App. Div. 2024). In that case, the court affirmed the dismissal of promissory estoppel and breach of the covenant of good faith and fair dealing claims based on another Société Générale "term sheet." *Id.* at 541. Given the term sheet's express statements that it created no "offer, agreement, or commitment to lend" and "that the loan would be subject to execution of satisfactory documentation," the court explained that it "was unreasonable for plaintiffs to have relied upon defendants' alleged promises to proceed with the transaction." *Id*.

Plaintiff contends that *Cypress Gates* is inapposite because it involved a different term sheet and different claims. Opp. at 22–25. But neither difference matters. First, while the content

7

of the two term sheets may not be identical, *compare* Term Sheet *with* Cyprus Gates Term Sheet, Ex. E to Opp. [Dkt. # 14-5], the *Cypress Gates* opinion noted the existence of disclaimer langage similar to the language here expressly stating that the term sheet was not a contract.  Other New York courts interpreting disclaimer language have also rejected claims that a binding contract exists.  *See, e.g., King Penguin Opportunity Fund III, LLC v. Spectrum Grp. Mgmt. LLC*, 135 N.Y.S.3d 363, 366 (N.Y. App. Div. 2020) (no binding agreement where "the term sheet expressly denied the existence of a binding agreement").

The fact that *Cypress Gates* involved a breach of the implied covenant of good faith and fair dealing claim does not distinguish the case either.  A claim for breach of the implied covenant of good faith and fair dealing depends upon "a valid and binding contract from which such a duty would arise."  *Kim v. Francis*, 125 N.Y.S.3d 411, 412 (N.Y. App. Div. 2020).  Indeed, the trial court in *Cypress Gates* found that the term sheet was not a contract.[1]  Hearing Tr. 19:2–5 ("There is no contract here. . . .  The term sheet very clearly provides that it's not binding until there is a writing.").

Plaintiff insists that the Term Sheet was a valid contract nonetheless because it required plaintiff to pay an origination and processing fee and a good faith deposit, as well as commit to an exclusivity provision.  Opp. at 6.  But the *Cypress Gates* trial court also took on this issue, and there, the court found a similar exclusivity provision to be an independent agreement that was binding on the parties but did not transform the term sheet into a contract.  Hearing Tr. 19:6–14 ("[T]he exclusivity provision does not create a contract where there is none.").

---

1       The trial court did not provide its reasoning in its order granting the motion to dismiss, but referred to what was "stated on the record on January 17, 2023."  *Cypress Gates, Inc. v. Societe Generale, S.A.,* No. 656792/2022, 2023 WL 12175259, at *1 (N.Y. Sup. Ct. 2023).  Defendant attached a copy of the transcript of the January 17, 2023 hearing to its motion to dismiss.  *See* Decision & Order on Motion, Ex. B to Mot. [Dkt. # 10-4] ("Hearing Tr.").

New York courts have found that certain individual provisions in a term sheet can be independently enforceable even if the term sheet itself is a non-binding contract. *See Parkmerced Invs., LLC v. WeWork Companies LLC*, 192 N.Y.S.3d 4, 6 (N.Y. App. Div. 2023) (affirming dismissal of breach of contract claim while upholding enforcement of exclusivity provision); *3C Grp. Ltd. v. RevCascade*, 2022 WL 837070, at *1 (S.D.N.Y. 2022) (applying New York law and finding that "[a]lthough the term sheet did not obligate the parties to follow through on that transaction . . . it included an exclusivity provision" which was binding on the parties); *Avant Cap. Partners LLC v. W108 Dev. LLC*, 2016 WL 7377276, at *3 (S.D.N.Y. 2016) (applying New York law and describing term sheet as "a catalogue of independent agreements"). Express language specifying that certain provisions are binding on the parties or survive termination of the term sheet indicate that those provisions are independently enforceable. *See, e.g., 119 Spring LLC v. 119 Spring Street Co., LLC*, 2014 WL 1695022, at *5 (N.Y. Sup. Ct. 2014) ("[T]he Exclusivity Paragraph is expressly included as a 'Binding Provision' that survives the expiration of the [letter of intent]").

Here, the fee, good faith deposit, and exclusitivity provisions were independently enforceable agreements that did not transform the Term Sheet into a binding contract for the loan. The origination and processing fee provision states explicitly that the fee was "earned by [SocGen] with the submission of [the] Term Sheet," meaning it was a fee paid in connection with the execution of the Term Sheet, not a promise in exchange for the loan. Term Sheet at 2. Similarly, the good faith deposit provision explained that the deposit would "be applied . . . to the payment of [e]xpenses," which were "all out-of-pocket expenses incurred by [SocGen] in connection with the Loan, *whether or not the Loan closes*." *Id.* at 9–10. So again, by the Term Sheet's own

language, the deposit itself was not meant to secure the loan, but rather to guarantee that defendant pursue its due diligence and underwriting efforts.

Similarly, the exclusivity provision does not turn the Term Sheet into an enforceable contract for the loan.  It states, "[f]or a a period of ninety (90) days following execution of [the] Term Sheet," SocGen "shall have exclusive right to provide the Loan to the Borrower," and that violation of the term would result in SocGen's retaining the good faith deposit.  *Id.* at 10.  This language reflects that SocGen had the right to consider the loan without competition, not that it would in fact provide the loan.

Altogether, the allegations in the complaint and the language of the Term Sheet fail to show that the parties entered into a binding contract for the loan, and therefore, the breach of contract claim under Count One fails as a matter of law.

**II.    The complaint fails to state a claim for promissory estoppel.**

The promissory estoppel claim in Count Two alleges that plaintiff reasonably and detrimentally relied on SocGen's "clear and definite promise to provide financing."  Compl. ¶ 44–45.

Under New York law, "an essential element of a promissory estoppel claim is a 'clear and unambiguous promise.'"  *Bentkowski v. City of New York*, 275 N.E.3d 597, 602 (N.Y. 2025).  Given the unambiguous language of the Term Sheet, the Court also finds that plaintiff has failed to allege the existence of a clear and unambiguous promise sufficient to sustain the claim.  Plaintiff's contention that the Term Sheet made a "definite promise to provide financing" cannot be squared with the Term Sheet's repeated, explicit language that it was "[n]ot a commitment" and that it did "not constitute an offer, agreement, or commitment to lend by Société Générale."  Term Sheet at 1–12.  There are no other factual allegations offered to show that SocGen made "clear and

10

definite promise," so there was nothing for plaintiff to have "reasonably relied" upon for purposes of promissory estoppel. *See King Penguin*, 135 N.Y.S.3d at 365 (finding it "unreasonable as a matter of law" for plaintiff to rely on a term sheet that "explicitly requires satisfactory completion of Lender's due diligence and execution of written loan documents before the parties are contractually bound"). Therefore, Count Two is also dismissed.

### III.   The complaint fails to state claims for fradulent inducement and negligent misrepresentation.

Counts Three and Four of the complaint rest on similar allegations. The "fraudulent inducement-concealment" claim in Count Three alleges that defendant "false[ly] represent[ed] . . . that it would fund the Loan if the conditions stated in the Term Sheet were satisfied," and that plaintiff "reasonabl[y] relied on [defendant]'s representations." Compl. ¶¶ 49, 53. The negligence claim in Count Four alleges that plaintiff had a "reasonable expectation that the Loan would be available on terms set forth in the Term Sheet," and that defendant "negligently failed to . . . make appropriate efforts to sell and securitize the Loan" and "negligently allowed [p]laintiff to proceed as if SocGen would fund the Loan." Compl. ¶¶ 58, 61–62.[2]

Both claims require plaintiff to allege that it justifiably relied on representations made by defendant. Fraud requires plaintiff to allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material

---

2       The parties dispute whether Count Four alleges a claim for negligence or negligent misrepresentation. Mot. at 17; Opp. at 31. Because Count Four relates to "SocGen's knowing *failure to inform* Plaintiff that the Loan would not be funded unless SocGen could assure itself that the Loan would be saleable on the secondary market," Compl. ¶ 64 (emphasis added), the Court agrees it is a claim for negligent misrepresentation, which concerns whether information relayed between the two parties was truthful. *See J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007) (finding that a claim for negligent misrepresentation requires "a duty on the defendant to impart correct information to the plaintiff").

omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996). And a claim for negligent misrepresentation "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007). The New York Court of Appeals has emphasized that reasonable reliance

> turn[s] on the reasonableness of both parties' conduct. [The] defendant must have imparted the information under circumstances and in such a way that it would be reasonable to believe plaintiff will rely upon it; plaintiff must rely upon it in the reasonable belief that such reliance is warranted.

*Heard v. City of New York*, 623 N.E.2d 541, 546 (N.Y. 1993).

For both claims, plaintiff has failed to allege reasonable or justifiable reliance. On top of the disclaimer language emphasized throughout this opinion, the Term Sheet itself specified that "[t]he actual terms and conditions upon which [SocGen] *might* extend credit to [plaintiff]" were "subject to" a lengthy list of conditions, including: "satisfactory completion of due dilligence, credit committee approval, satisfactory documentation, the absence of any material adverse change in the financial condition or prospects of the Property, . . . and *other such terms and conditions as are determined solely by Société Générale*." Term Sheet at 11 (emphasis added). None of that suggests it was reasonable or justifiable for plaintiff to rely on the Term Sheet as an indication that the loan was in fact forthcoming.

Further, there are no allegations in the complaint as to SocGen's conduct outside the Term Sheet that would give rise to a plausible inference that it was reasonable for plaintiff to rely on SocGen; indeed, according to the complaint, SocGen did not show up for what it refers to as the "closing date" – the day the Term Sheet expired – to sign any of the paperwork plaintiff believed

was necessary to close the loan. And there are no allegations related to any oral statements or promises made by SocGen or its employees regarding the loan.[3]

Therefore, Counts Three and Four will also be dismissed.

## CONCLUSION

For all the reasons stated above, defendant's motion to dismiss will be **GRANTED** and the complaint will be **DISMISSED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: July 28, 2026

---

3  Plaintiff also fails to allege that defendant made "a misrepresentation or a material omission of fact which was false and known to be false," as required for fraudulent inducement, or that plaintiff imparted "information [that] was incorrect," as required for negligent misrepresentation. *Lama Holding Co.*, 668 N.E.2d at 1373; *Stavitsky*, 863 N.E.2d at 587. Plaintiff claims that defendant "false[ly] represent[ed] to Plaintiff that it would fund the Loan if the conditions stated in the Term Sheet were satisfied," Compl. ¶ 49, but the Term Sheet explicitly negates that proposition, and plaintiff does not allege any other assurances by defendant suggesting otherwise. Because defendant never agreed to fund the loan if all conditions were satisfied, plaintiff also cannot allege that defendant imparted false or incorrect information.